All right, thank you. You can be seated. All right, whenever you're ready. Good morning, Your Honors. If it pleases the Court, I'm Wayne Buchanan Eades from Raleigh. I'm here to represent Marco Flores-Alvarado. This is a case that raised four issues, all of which I think were well briefed and probably need no comment for some of those issues. But I think there is still some confusion concerning the first issue, which is by far the most important in this case. That is the establishment of the drug weight. It's important to understand in this case the offense conduct was written to include the same offense conduct in the pre-sentence reports of multiple defendants. As the report writer acknowledged, there were two conspiracies in this case. There was the larger conspiracy, which was led by my client, Marco Flores. Those were two independent conspiracies, two independent drug trafficking organizations. They worked independently of each other on more occasions than they worked together. They did sometimes overlap because when one was short of something, they would buy and sell from each other. The overlapping has caused some in this case, it caused the foreseeable drug weight in the relevant conduct to be miscalculated. I'd like to make specific reference to my opening brief. There's a chart that begins on page four. The bulk of it is on page five, and it concludes at the top of page six. In this case, there were both cocaine and marijuana sales. The total marijuana equivalency that was held against my client was 31,111 kilos. You can see from this chart that that is exactly what this chart adds up to. The confusion has come about because at the sentencing hearing, the judge did not specifically go into the objections. He asked if I had objections. I did. I had made those line by line, paragraph by paragraph, with a specific reason for each one. He then turned to the government attorney, and he asked her where the weight came from. I'd like to point out in my chart that a lot of things are noted. They apply not to my client, but to the Enrique Mendoza Figueroa group. I've indicated those are not applicable. They're either not applicable because the pre-sentence report attributed those weights or those cash seizures and the drug equivalency to someone other than Marco Flores, or as you see down near the bottom, there was a small amount of cash seized. It was not counted against my client because the principles of double counting. It was payment for a shipment that was noted at paragraph 20. It was a partial payment, actually, for a shipment for 20 pounds of marijuana that had been delivered to someone. But the things that have a kilogram, a kg notation, those are the things that add up to 31,000 plus kilograms of marijuana equivalency. Now, we challenged many of those. We admitted many of those. What Marco Flores admitted totaled up to in excess of 8,000 kilos of marijuana credibility. He did what he did. He admitted to it. Say that again. What he admitted to made him a man of credibility. Yes, sir. Say that again. I want to hear it. I believe that his admissions, his objections were to the things he says, I did not do these. I did these other things. He admitted very substantial amounts of drugs that would have brought him a long prison sentence by themselves. There's no reason not to tell the truth throughout once you admit something on that level, is what you're saying. That's what I'm saying. At that point, I think that's a man whose credibility has been established, and I think the burden is on the government to prove that the other things should be held against him. You can't take it in a vacuum. I mean, he admitted that, but look what he did. I mean, there's not a whole lot of credibility in what he's doing. Well, I'm not saying he's a good guy now. Don't get me wrong. I mean, it may be something to consider, but it doesn't establish that he's credible as a matter of anything. I mean, just maybe you do consider that. That's something you can think about, but you got to know who you're talking to. Plus, you got to also know there's not a whole lot he could do to dispute it. That's true, but I think the fact that he did not dispute substantial amounts of drugs gave him some credibility and made him worthy of consideration in his objections to the others where he said, I didn't do those. I just want to make sure I'm not misunderstanding anything. You say that he admitted to doing some things, and then he's challenging the things that he didn't do. But is that the question, whether he did it? Isn't the question whether it's reasonably foreseeable as part of the conspiracy that he did admit to? I mean, he doesn't actually have to have done it for it to be attributable to him, right? I think that's exactly the question. Was it reasonably foreseeable? Or, as he argued, was it done entirely by the Mendoza-Figueroa group independently? And again, I want you to correct me if I'm wrong. Justin, it seemed as though a big part of the objection, though, it was, I didn't do it. That was just an attempt. I attempted to buy those drugs, but it was an unsuccessful attempt, so I didn't really do it. It seems like the arguments that were made below didn't really go as much to foreseeability as to just, I didn't do it, so therefore, it can't be charged to me now. There are two categories of objections. May I retrieve my water? I'm very dry today for some reason. That happens up here. There were basically two categories of objections. There were things that he said he did not do. The other independent drug trafficking organization did those. Let me give two examples of that, and then I will go specifically to your question, Judge Harris. At the sentencing, the prosecutor argued that 189,000 seized in Georgia and converted to a drug weight and a marijuana equivalency was something he should be held accountable for. If you refer to my brief, that's listed at paragraph 14 in the chart. The pre-sentence report did not hold my client accountable for that because it was clear that that was something that the Mendoza-Figueroa group had done. That was not foreseeable to my client. It was not anything he was a part of, and yet the judge made note of that when the prosecutor brought that to his attention. He said, okay, that's so-and-so. That's 1,180 kilograms of marijuana equivalency. What next? Another example is she made reference to, and this is not the prosecutor that handled this at the district court level, but the prosecutor there then made reference to a seizure of $25,000. Again, that was something that was mistakenly counted against my client at the sentencing hearing, but that was not something that the pre-sentence report held him accountable for. The district court adopted the pre-sentence report, right? It seems like there was some loose talk at the sentencing hearing, but given that the district court adopted the report, we can assume that that wasn't relied on, right? I think we have to assume it was relied on because of the things the judge said. He said, okay. He said, I've got that. What else do you have? He was making notes as the prosecutor spoke. Now, as to the things, there were two items that I argued were not reasonably foreseeable. My client said, I didn't actually do that, but the context was so remote and so devoid of fact that I'm not sure that there was sufficient evidence to hold him responsible for that role of a conduct. There were two incidents, one that happened in Kentucky, one that happened in Kentucky. My client was told could supply him with marijuana. He made a trip out there to meet the person that he talked to on the telephone. That deal fell through, and the pre-sentence report recorded on page, joint appendix page 108 and 109, the shipment was canceled. Now, there are no facts stated. We don't know why it was canceled. We don't know if they couldn't agree on price, if there was no marijuana to be sold. All we know is it was canceled. At some point thereafter, the pre-sentence report, again, same pages in the joint appendix, recorded that he, being my client, Marco Flores, and another man were again coordinating the delivery of a large shipment of marijuana from Lexington. We don't know who that man is. We don't know what relationship he has to Marco Flores. We don't know what relationship he has to the person that Marco Flores had contacted in Kentucky. We simply don't have any information. The case agent was sitting in the courtroom. We could have put on evidence, but that was not done. We don't know if that's reasonably foreseeable, and because we don't have any facts and no evidence was established, my argument is that we should not use that against him. Relevant conduct and reasonable foreseeability cannot mean that this is something to hold a person accountable for from now until eternity. Wasn't it his phone calls that led to the seizure of the drugs in Kentucky? The police got a wiretap. They identified a new group in Kentucky that got wiretaps as a result of the wiretaps. They learned that that group had received a shipment. We don't know if that's the same group. We simply know that because of the wiretaps that the police were able to . . . Wiretaps of your client's phone? My client was wiretapped. Yeah, so it was as a result of those taps on your client's phone that you got to the Kentucky drugs? Indirectly. It originated with that, but then the police got more wiretaps. They were able to wiretap additional phones, and they learned through . . . We don't even know which one. Through one of those wiretaps that somebody in Kentucky was getting a shipment of marijuana. The police made arrests. They seized a little bit more than 3,500 pounds of marijuana. They seized approximately $1.8 million. The pre-sentence report did not attempt to hold my client accountable for the money seized, but it did in fact, over my objection, hold my client accountable for all of the marijuana seized. Can I . . . Go ahead. No, you go ahead. I just have a quick question. Your objection is that there's no factual basis for these particular quantities to be attributed to him? Yes, sir. I just don't see how we can say it's reasonably foreseeable and part of his relevant conduct if we don't have the facts. Something happened. Can I ask just a procedural question then, if that's the objection? My understanding is that the district court is entitled to rely on the attributions in the pre-sentence report, unless at the sentencing hearing . . . Tell me if I'm wrong about this. The defendant puts forward evidence that would cast them into question, more than object. It's not enough just to object and say, I disagree with those findings. You actually have to the pre-sentence report relied, but do you have a different understanding? I agree in part and I disagree in part. I don't think we have any obligation to put on evidence. I think we have the obligation . . . The burden of proof is two-part. There's a burden of production and a burden of persuasion. I think we have the burden to raise the issue in a credible manner, and we did that, which I will find for you. Then once we do that in a credible manner, it is my understanding that the government then has the burden of persuasion and must put on evidence. I'm fond of a quote. I was sitting in Judge Fox's courtroom in Wilmington one time, and although it was not my case, I was sitting on the front row and I heard it clearly. A lawyer had made objections to drug weights in a pre-sentence report, and there was a salsa handling the case in the courtroom. The salsa stood up and said, I rely on the allegations in the pre-sentence report. Judge Fox was livid. He got himself under control and he said to that salsa, the way this works is he makes objections, you put on evidence, you cannot just rely on the allegations in the pre-sentence report. Do you have a witness to call? It is different, though. A pre-sentence report, I've seen it come up here and they're treated a whole lot different than just a regular trial. When you're in a trial process, you do have an obligation to put on evidence because the pre-sentence report contemplates that some probation officer, somebody has been through this and made some determinations there, and it's treated very differently than the trial itself. So to get up and simply say, I object, well, we kind of figured you object. I think you can probably take it for granted you object to everything in that report, but you've got to do more than that. You've got to come forth and at least put something to refute it other than, I just don't think that's right. Or do you think that's the way it is? I mean, if you get up and say, I object to that quantity of drugs, do you think that's enough? Judge, that alone may not be enough, but in this case, to answer your question, Judge Harris, on page 119 of volume two of the joint appendix, we did make a detailed objection to the information being used from the Kentucky case. We did not feel we had to put on evidence, but we did feel that we made a sufficiently detailed and credible objection that it shifted the burden of persuasion to the government, and we actually anticipated when the case agent walked into the courtroom that he would be testifying that day. He was there through the entire proceeding, but he was not called to the stand to testify. Are you saying the intercepted call led to the seizure of some drugs, but not the 3,500 pounds? No, sir. No, I'm saying that an intercepted phone call led to the seizure, I believe it was 3,510 pounds of marijuana in the Kentucky case. In the Stokesdale, North Carolina case, which were similar facts, it was 1,464 pounds, but we don't know if those were intercepted phone calls of my client or of the person that he contacted because he was dry and he was looking for a source of marijuana. We don't even know if it was that person or someone else because we know that the government obtained additional wiretaps. Counsel, I'm sorry. Can I go back to the objection? This is what I was remembering. The objection says that . . . this is the Kentucky objection, right? That the defendant was unable to actually purchase the marijuana because everyone was arrested before the defendant was able to negotiate the terms of the deal. This was my confusion. It sounds like you're not calling into question the factual predicate in any kind of meaningful way. You're just saying, look, he was unable to complete the thing, so why should this be charged to him? No, ma'am. That's not what happened. I do remember reading that. I think in one of these briefs, what really happened factually is that my client was dry. He was looking for a source of marijuana. Somebody said, call this guy so-and-so. I don't know if a name was even given. If so, I don't remember it. But he did call that guy in Kentucky. He arranged to go out to Kentucky and speak to that guy. The deal was canceled. We don't know why. We don't know if they had arrested before the deal could be completed. Those seven people got arrested in Kentucky, I believe, four weeks after my client's last contact with the person that he called out there. The deal was not canceled because those people got arrested and drugs and money got seized before his deal was canceled. I'm in the red here. I think my time is up and then some. It is, but you'll be coming back in just a sec. Ms. Watford-McKinney. May it please the Court. My name is Yvonne Watford-McKinney. I represent the United States. This is a case about relevant conduct. In this case, the relevant conduct concerning all of the drug amounts that were attributed to the defendant in the presentence report are the drug amounts that the Court used to base this defendant's sentence on. There was nothing added by the prosecutor at the sentencing hearing that was outside of the PSR that was considered by the Court. Certainly concerning the 1,424 pounds of marijuana and the 3,510 pounds of marijuana, those amounts are attributed to the defendant because he actually coordinated for the shipment of that marijuana. You're giving us your factual basis for it. My understanding is when a defendant objects to a quantity being attributed to him at the sentencing, then the case agent is called forward to testify as to what the factual basis is for attributing that amount to the defendant. The question is, when at the sentencing, was a sufficient factual basis established as to the quantities that he objected to? Your Honor, I think it certainly is better practice to put a witness on when there's an objection. In this case, that did not happen. The prosecutor spoke the facts establishing those amounts, but the information that the prosecutor stated was not in conflict with the information that was in the presentence report. Also, I would indicate that the defense counsel did object, but he did not do anything more than object. He did not say this information is unreliable for this reason or that reason. The prosecutor indicated on the record that all of the discovery, all of the intercepted calls, all of the information upon which the information in the PSR was based had been turned over to defense counsel in discovery. And no objection was made to the prosecutor reciting? That's exactly right. And I would indicate also that at the arraignment where the defendant entered a guilty plea, the prosecutor made a very detailed statement of a factual basis for the plea that included the 1,424 pounds, the 3,510 pounds, and provided additional information to which there was no objection at that point. So here we get to sentencing, and there's an objection. So I would suggest to the court that the burden here is just preponderance of the evidence. And there was enough stated in the presentence report through which the court could find a preponderance of the evidence in determining the base offense level and what the appropriate guideline range would be in this case. Can I ask you actually, unless you have questions about the report, can you speak to the claim that there's not a sufficient explanation for the sentence in this case? Yes. Yes, I can. As the court is aware, when Judge Boyle was contemplating the sentence, and there was a lot of colloquy back and forth between the court and defense counsel about this and the government counsel about the sentence, the judge never spoke the words of 18 U.S.C. Section 3553A. He never did that. I don't know that he typically does do that. But he did speak to this defendant's role. He did speak to the fact that this was an international drug cartel, that the defendant was what he called a pivot man, that the defendant had an opportunity or could have decided to cooperate. He chose not to. That the defendant interjected a defense of duress and wanted the court to administer mercy in his sentencing because of duress. The court did consider that statement along with the defendant's reasons for not cooperating. Yeah, let me just sort of my question about all this. I don't doubt that the district court, it seems clear from the record, considered all of these factors and there was this colloquy. But is there a separate requirement that sort of at the end in open court, the judge, whether or not he cites the statute, apart from whether he says magic words or anything, but shouldn't there be kind of a wrap-up explanation at the end? Is that a separate requirement from considering? Aren't you also supposed to then explain? I think a wrap-up explanation is typical, but I don't know that required. Why not? It seems like the statute, you know, one section of the statute says you have to consider these factors and then a whole separate section says, and then in open court, we need the explanation for the appearance of fairness. You're putting this guy in jail for the rest of his life. Say why. I absolutely agree with the court. I absolutely do agree. But I think in, and I don't want to say this particular judge, but since this is Judge Boyle, this is typically what he does in sentencing hearings. And I can't explain it any more than that. What was the relationship, or what do you maintain was the relationship between the Mendoza group? I'm sorry, Your Honor. What was the relationship between the Mendoza group and the Flores-Alvarado group? Yes. And I did want to comment on that because counsel said this was two conspiracies. This was a single conspiracy. It was charged. Are they separate groups? I'm really trying to figure out, are they separate groups? What evidence did you have to show this relationship? Well, what I can point the court to is the prosecutor's statement at the sentencing hearing when she was talking about the relationship between these two individuals. And what she said was that Mr. Mendoza-Figueroa was the main person and that our defendant here was in charge of one of his networks. So that they all worked together as one conspiracy and our defendant here was part of a conspiracy working for Mr. Mendoza-Figueroa. That's the sentencing hearing. Where did that evidence come from? That he was one of the lieutenants or part of the bigger group? Well, that's what she said based on the investigation, but based on what they learned during the course of the wiretap and the various surveillances and confidential sources provided information. Could you attribute the $189,000 to the Flores-Alvarado group if you wanted to? I mean, does the evidence show that? Your Honor, I'm just not sure about that. I know that it was not attributed to either Enrique Mendoza-Figueroa or this defendant in order to so that it could have been money that had been gathered by this other source of supply for the marijuana. But that's the most I know about that. What was the timeline for the seizure of the drugs from the Kentucky group? What was the timeline? Originally, in August, mid-August of 2011, he went to arrange the, as it turned out, it was a 5,000-pound deal for marijuana. For some reason, that was canceled. Two months later, however, is when they actually did coordinate for the 3510. Of course, the court knows what happened with that from the PSR. And it appears that it was this defendant and Fierro who was a source of supply for this defendant and Mr. Mendoza-Figueroa for marijuana and cocaine. And so they were coordinating with Fierro both instances. And it was the chatter on the wiretaps that alerted the agents that they again were attempting to put this multi-thousand kilogram or pound deal of marijuana together. If there are no further questions. Was there any point at which those drugs seized in And the reason is that he coordinated for that. So the fortuity of law enforcement intervention, which resulted in the seizure, should not give him a windfall. He coordinated for that. And so whether it was all for him or part of it for him, he negotiated for the total amount. And that makes it all attributable to him. Just one last question. The defendants seems to allude to the fact that if the defendant is willing to say he has 8,000 kilos, why would he want to dispute this other part unless it just wasn't him? He's basically saying he has credibility. That's a lot. If you're going to dispute it and trying to get out of it, you wouldn't admit to that. Well, I think what belies that is the fact that his voice is on the wiretap arranging for those drugs. And the addition of those drugs perhaps would increase his guideline range. And that would be one reason why he would dispute it. Thank you. Thank you. All right. Reply. I really have no idea how far I ran over and how much time I have left. So I'm going to try very quick. Monitor. You won't have a trap door go on for you, but it's going to be pretty close to it. Let's see. Let me address a couple of questions. One of you asked about the Kentucky timeline. That was me. The original trip out there was on August 17th, 2011. The phone calls to make the introductions of people unknown to each other had occurred prior to that. The seizure, and this would address your comment or question, the seizure was made on October the 4th of the same year. That's approximately seven weeks later. Somehow something in these documents indicated that happened a week earlier. It actually happened seven weeks later after the first attempt to make a deal was canceled. And what is your response to Mrs. Blackfoot-McKinnon's answer regarding the relationship between the Mendoza group and the Flores-Avarado group? They were two independent drug trafficking organizations. They overlapped at times because they worked together. That is the conspiracy that we're hearing about today. The overlap at times. Was Flores one of the underlings for the Mendoza group, or was it he's a totally separate one and they're just coordinating a few times together? The latter is my understanding. Where did that come from? Memory of the case at this point. I can't turn to a specific paragraph in anything to point that out to you. I do recall though... Evidence of both. Were there positions stated on both things? I'm thinking in terms of the proof level at this point. There were positions stated as to both and they should not have been. The position should have been stated as to this conspiracy, as to those things reasonably foreseeable to Marco Flores. But again, the $189,000, that was ticked off by the judge specifically on the record as being something he counted against my client. Paragraph 14 of the pre-sentence report, which is joint appendix, page 108, that specifically says that the agents learned that Mendoza Figueroa arranged to ship a large amount of currency from Robeson County to Texas as payment for shipment of cocaine. It was seized, blah, blah, blah. In my chart, I showed that was not attributed to my client. And in this joint appendix, it was not attributed to my client. But at the sentencing hearing, it clearly was and that was mistaken. That's where the confusion came in. The overlapping groups should have been clarified at that time. There was a comment made just a few minutes ago about my client coordinating after the Kentucky deal fell through. The agent said he was coordinating a deal again. What does that mean? We need facts to know. Maybe he was just calling out there saying, do you have anything now? I still don't have anything. Do you have anything I can buy from you? We need facts. I don't know what coordinating a deal means and that's all the pre-sentence report stated about that. And in reference to the comment about my client's voice on a wire, if my client's voice was on a wire coordinating the deal, why don't we have that? Why didn't the case agent get up and testify? We've got him on wiretap, TT3, date this, recording at this number and here's what he said. I simply think that we need facts and we need more proof. Otherwise, it should not be held against my client. Do you want to say anything about your sentencing claim or no? Yes, I do. I don't know why I'm all dried out today. Maybe nervousness, although I should not be at my age. Judge, I sat here and I heard the first argument on the first case and again, I think at some point, the judge should have wrapped up all these things. Yes, we talked about things in the sentencing hearing. I presented 3553A factors. The judge asked questions. The judge made comments, but at some point, he just went abruptly to sentencing. He never said, I've considered this. I have rejected that. I based my sentence on these factors. He never articulated a statement of reasons and I believe that he should have, especially in this case where there is legitimate controversy about the drug weights and whether that was calculated correctly. Yes, he did consider the guidelines, but if the guidelines are calculated incorrectly, everything else fails after that and that statement of reasons becomes much more important. All right. Thank you. Thank you. Appreciate your undertaking representation, Mr. Flores-Alvarado. Thank you, sir. All right. We'll come down and greet counsel.
judges: William B. Traxler Jr., James A. Wynn, Jr., Pamela A. Harris